AUSA: Mark Chasteen          Telephone: (313) 226-9555
AO 91 (Rev. 11/11) Criminal Complaint          Special Agent: Julia MacBeth          Telephone: (313) 919-1373

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

United States of America
v.
**JAVA DOMINIQUE CARTER**

Case No.

Case: 2:22−mj−30125
Assigned To : Unassigned
Assign. Date : 3/8/2022
CMP: SEALED MATTER (MAW)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 6 – May 5, 2021__ in the county of __Oakland__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §1343 | Wire Fraud |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Julia MacBeth- Special Agent
Printed name and title

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __March 8, 2022__

_____
Judge's signature

City and state: __Detroit, MI__

Elizabeth A. Stafford- U.S Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF A COMPLAINT

I, Julia MacBeth, Special Agent for the Federal Bureau of Investigation, being duly sworn, state as follows:

## INTRODUCTION AND AFFIANT BACKGROUND

1. I am a Special Agent of the FBI and, as such, an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code.  I am empowered to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

2. I have been employed by the FBI since May 2016.  Prior to joining the FBI, I was a Federal Air Marshal from December 2010 until April 2016.  I earned a Bachelor's degree in criminal justice from Western Michigan University and a Master's degree in criminal justice from Tiffin University.  I have received law enforcement training at the Federal Law Enforcement Training Center (FLETC) and the FBI Academy.  During my employment with the FBI, I have investigated federal crimes involving mail fraud, wire fraud, money laundering, investment fraud, identity theft, and various other criminal matters.  At all times during the investigation described in this affidavit, I have been acting in an official capacity as a Special Agent of the FBI.

## PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of a criminal complaint and arrest warrant for JAVA DOMINIQUE CARTER of violations of Title 18, U.S.C. §1343 (Wire Fraud).

4. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that CARTER, resident of the Eastern District of Michigan, is responsible for devising and perpetrating a scheme to defraud a financial institution and the Paycheck Protection Program, within the Eastern District of Michigan. There is also probable cause to believe that this scheme involved the use of interstate wire transactions to execute the fraud.

5. This affidavit is submitted for securing a criminal complaint and arrest warrants; therefore, this affidavit does not contain every fact that I have learned during the course of the investigation. I have only set forth the facts necessary to establish probable cause to believe that CARTER violated the statute identified above. The information contained in this affidavit is based upon my personal knowledge, training, and experience, as well as the combined knowledge, training and experience of other law enforcement officers and agents with whom I have had discussions.

6. Title 18, U.S.C. § 1343 criminalizes the use of interstate wire communications for the purpose of executing or attempting to execute any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

## BACKGROUND OF THE PAYCHECK PROTECTION PROGRAM

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

8. PPP now allows certain eligible borrowers that previously received a PPP loan to apply for a Second Draw PPP loan with the same general loan terms as their First Draw PPP loan. Second Draw PPP loans can be used to help fund payroll costs, including benefits. Funds can also be used to pay for mortgage interest, rent, utilities, worker protection costs related to COVID-19, uninsured property damage costs caused by looting or vandalism during 2020, and certain

supplier costs and expenses for operations. A borrower is generally eligible for a Second Draw PPP loan if the borrower: previously received a First Draw PPP loan and will or has used the full amount only for authorized uses, has no more than 300 employees, and can demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020.

9. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. To be a qualified business, certain criteria must be met, such as being in operation on Feburary15, 2020 and not permanently closed. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses. The maximum amount which could be claimed for a self-employed individual is $100,000, which would equate to $8,333.33 monthly and a maximum loan amount of $20,833.

10. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

11. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

12. PPP now allows certain eligible borrowers that previously received a PPP loan to apply for a Second Draw PPP loan with the same general loan terms as their First Draw PPP loan. Second Draw PPP loans can be used to help fund payroll costs, including benefits. Funds can also be used to pay for mortgage interest, rent, utilities, worker protection costs related to COVID-19, uninsured property damage costs caused by looting or vandalism during 2020, and certain supplier costs and expenses for operations. A borrower is generally eligible for a Second Draw PPP loan if the borrower: previously received a First Draw PPP

loan and will or has used the full amount only for authorized uses, has no more than 300 employees, and can demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020.

## ADDITIONAL BACKGROUND INFOMRATION

13. Fountainhead Small Business Finance LLC (Fountainhead) is a nationwide direct lender headquartered in Lake Mary, Florida. Fountainhead utilizes Womply Inc, a San Francisco, California based software company, to assist in processing PPP applications. Fountainhead Small Business Finance disburses all PPP loans via Automatic Clearing House (ACH) transfer from an account held at Capital One Bank, headquartered in McLean, Virginia. Therefore, a processed application and funded PPP loan submitted from Michigan would cause interstate wire transfers of both the application and monetary disbursement.

## PROBABLE CAUSE

14. Around May 2020, the FBI and US Postal Inspector Service (USPIS) became aware that CARTER had applied for numerous PPP loans and received funding for two PPP loans under his name as a self-employed individual. Subsequent investigative activities conducted by the FBI and USPIS identified multiple PPP loans received by CARTER for a business which does not appear to have any legitimate business dealings and were filed using falsified tax records.

15. A PPP Borrower Application Form was filed on March 29, 2021, by CARTER with Fountainhead. The listed address on the application was on Blair Ct, West Bloomfield, Michigan in the Eastern District of Michigan. The loan was requesting $20,833 for the purpose of payroll costs. CARTER listed himself as a sole proprietor doing business as JAVA CARTER with a total gross income of $136,720. CARTER provided his verified social security number on the application. This application was digitally signed by CARTER as the authorized representative of the applicant.

16. Less than a month later, on April 12, 2021, CARTER filed a Second Draw Borrower Application Form with Fountainhead. The application listed address on the application was on Blair Ct, West Bloomfield, Michigan located in the Eastern District of Michigan. The loan was requesting another $20,833 for the purpose of payroll costs. CARTER listed himself as a sole proprietor with a gross income of $136,720. This application was digitally signed by CARTER as the authorized representative of the applicant.

17. The same Internal Revenue Service (IRS) tax record was provided by CARTER as supporting documents for both applications. The tax form was a 2019 Schedule C (IRS Form 1040): Profit or Loss from Business for a Sole Proprietorship forms for business CARTER SHOP. The listed service of the

business is barber. The form reports a gross income for the company in 2019 as $136,720. The name of the proprietor is CARTER.

18. According to the Internal Revenue Service (IRS), no Schedule C 1040 forms, were filed for CARTER SHOP in 2019 or 2020. Therefore, the Schedule C forms submitted to Fountainhead to obtain both PPP loan applications were falsified and not legitimately filed tax records.

19. A search of the State of Michigan's Department of License and Regulatory Affairs revealed there are no records for company CARTER SHOP registered to or by CARTER.

20. State of Michigan's Department of License and Regulatory Affairs records indicate CARTER does not hold a barber or cosmetology license in the State of Michigan. Additionally, CARTER SHOP is not a licensed barbershop.

21. A Bank of America checking account ending in 1151, titled JAVA D CARTER, was opened on April 16, 2021. CARTER is the sole signer on the account. The most recent billing address for the account is on Blair Ct, West Bloomfield, MI.

22. On April 20, 2021, the bank account ending in 1151, titled JAVA D CARTER, received an incoming ACH transfer for $20,833 from Fountainhead, for the purpose of a PPP loan disbursement, causing an interstate wire transfer of the

funds. On May 5, 2021, a second ACH transfer of $20,833 was transferred to account ending in 1151 from Fountainhead for the purpose of a PPP loan.

23. Monthly bank statements provided by JP Morgan Chase showed that account ending in 1151 had only one deposit of $200 to open the account prior to the PPP fund transfers in April 2021. A review of the account did not show any legitimate business transactions indicative of a hair stylist business as specified on the PPP loan applications.

24. During the course of this investigation, it was discovered CARTER had filed other PPP loan applications, which were ultimately declined. CARTER submitted a PPP loan application on March 6, 2021, for a different business, CARTERCARTER PLLC. On this application CARTER indicated that CARTERCARTER PLLC was established on February 19, 2019, had six employees on payroll and requested a loan for $40,000. Attached to the application were Schedule C IRS forms for years 2019 and 2020 taxes. This loan was declined due to the business having already applied for a PPP loan.

25. As referenced above, according to IRS records, no taxes were filed by CARTER for CARTERCARTER PLLC in 2019 or 2020, indicating these tax forms were fabricated for the purpose of falsifying the PPP application.

26. According to the State of Michigan's Department of License and Regulatory Affairs, CARTERCARTER P.L.L.C was organized on February 11, 2020 by

CARTER. The purpose of the company was for the purchasing and selling of homes. On the referenced PPP application, CARTER listed the year of establishment as February 19, 2019.

27. According to the U.S Department of Labor, during this time period, starting in May 2020, in which CARTER claimed to have been working as a barber, CARTER also received approximately $10,040 in unemployment benefits.

28. Open source internet checks do not reveal any results for CARTER as a hair stylist or CARTER SHOP. Additionally, there are no relevant results for CARTERCARTER PLLC. Based on my experience investigating fraud, the lack of internet and social media presence, unfiled taxes, and the establishment of the companies after the start of the pandemic indicates these companies do not appear to have any legitimate business dealings and are not currently in business or were fabricated for the purpose of fraud.

## CONCLUSION

29. Based on the investigation thus far, including the facts set forth above, your affiant submits that there is probable cause to believe that JAVA CARTER executed a scheme to defraud by knowingly falsifying PPP loan applications and the attached tax documents. CARTER used fraudulent tax forms and fabricated businesses to illegally acquire $41,666 in PPP funds and unsuccessfully attempted to acquire thousands of dollars more. In addition,

while doing so, CARTER caused interstate wire transmissions of funds.

Therefore, your affiant believes that probable cause exists that JAVA CARTER violated Title 18, U.S.C. §1343 (Wire Fraud).

Respectfully submitted,

*Julia MacBeth*
Julia MacBeth
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence
and/or by reliable electronic means.

*Elizabeth A. Stafford*
Elizabeth A. Stafford
United States Magistrate Judge